Filed 9/9/16  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALIFORNIA PUBLIC UTILITIES COMMISSION,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>MICHAEL J. AGUIRRE,<br><br>        Real Party in Interest. | A147570<br><br>(San Francisco County<br>Super. Ct. No. CPF-15-514188)<br><br><br><br>**ORDER MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |

BY THE COURT:

It is ordered that the opinion filed herein on August 31, 2016, be modified as follows:

At the end of the Disposition, the following is added for clarification:  "Let a peremptory writ of mandate issue directing respondent superior court to set aside and vacate its February 9, 2016, order overruling petitioner's demurrer to real party in interest's claim under the Public Records Act, and to thereafter enter a new order sustaining the demurrer without leave to amend.  The previously issued stay shall dissolve upon issuance of the remittitur.  (Cal. Rules of Court, rules 8.272(b)-(d), 8.490(d).)"

This modification does not effect a change in the judgment.

Date: _____  _____, P.J.

1

Filed 8/31/16 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALIFORNIA PUBLIC UTILITIES COMMISSION,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>MICHAEL J. AGUIRRE,<br><br>        Real Party in Interest. | A147570<br><br>(San Francisco County<br>Super. Ct. No. CPF-15-514188) |

This writ petition raises the narrow question whether a petition to compel the California Public Utilities Commission (CPUC) to produce documents under the Public Records Act (PRA) can properly be filed in superior court, or whether Public Utilities Code section 1759 (section 1759) bars the superior court from exercising jurisdiction over such a lawsuit. We conclude the latter, and will issue a writ of mandate commanding the superior court to set aside and vacate its order overruling a demurrer on this ground and to enter an order sustaining the demurrer without leave to amend.

PROCEDURAL BACKGROUND

Real Party in Interest Michael Aguirre (Aguirre) filed a Petition for Writ of Mandamus and Complaint for Injunctive and Declaratory Relief in San Francisco Superior Court against the CPUC for failing to comply with the PRA, Government Code sections 6250-6276.48 (Complaint). The superior court summarized the allegations in the Complaint, "The San Onofre Nuclear Generating Station was closed after it leaked

1

radiation in 2012. The [CPUC] regulated the plant. Southern California Edison (SCE) and San Diego Gas and Electric Company (SDGE) owned the plant. The costs of the shutdown and loss due to the shutdown exceeded $4 billion. The CPUC approved SCE assigning $3.3 billion of these costs to utility ratepayers. This agreement was reached in a hotel room in Warsaw, Poland, at an *ex parte* meeting between former CPUC President Michael Peevey ('Peevey') and former SCE executive Stephen Pickett ('Pickett'). The agreement was outlined on hotel stationary [sic]. The CPUC adopted the agreement, stopped investigating the plant's closure and offered $25 million to fund environmental research at the University of California." Aguirre made PRA requests seeking the production of emails and other documents related to the CPUC's investigation of the San Onofre Nuclear Generating Station shutdown and the settlement and meetings, as described above. Aguirre alleges, among other things, that the CPUC refused to produce records pursuant to certain PRA requests, including emails and writings of Peevey and current CPUC President Michael Picker "regarding the backroom plan to kill any CPUC investigation into who and what caused the unlicensed steam generators to be deployed at San Onofre and who permitted Edison to unlawfully charge Edison customers for them."[1] The complaint requests orders requiring the CPUC to produce writings called for under Aguirre's Public Records Request Nos. 1386 and 1414, as described in the complaint.

The CPUC demurred on multiple grounds, including that under Public Utilities Code section 1759 the superior court has no subject matter jurisdiction over this matter,

---

[1] Aguirre's petition in the superior court also sought a declaration in what was in effect a second cause of action that the CPUC had failed to comply with Government Code section 995 requiring open meetings "because it is providing a criminal defense to unidentified current and former CPUC agents . . . without determining in a duly noticed public meeting that providing such a defense in a criminal matter would be in the best interests of the public entity . . . ." The CPUC demurred on the ground that the superior court had no jurisdiction over the subject matter, and that Aguirre failed to state facts sufficient to state a cause of action. The superior court sustained the demurrer to this cause of action without leave to amend. This ruling is not before us, and we do not address it. For simplicity, when we refer to the trial court's ruling on the demurrer in this opinion, we are referring only to the PRA cause of action.

and that Aguirre had failed to exhaust his administrative remedies before filing the lawsuit.  The superior court held multiple hearings on the demurrer, and permitted a second round of briefing.  Although the CPUC steadfastly asserted that the superior court had no jurisdiction, it acceded to Aguirre's request for a continuance for the parties to meet and confer.[2]

Eventually the superior court overruled the CPUC's demurrer on these grounds, and the CPUC filed a petition for an extraordinary writ directing the trial court to vacate its order and sustain the demurrer.[3]  We issued an alternative writ directing the superior court to vacate its order or show cause why we should not issue a peremptory writ.  On July 8, the superior court indicated that it would neither vacate the order nor show cause why a peremptory writ of mandate should not issue.  We received full briefing and heard oral argument.[4]  We emphasize that the merits of Aguirre's Complaint are not before us, and in reaching our decision that the superior court had no jurisdiction, we do not address the merits of his underlying claims or his PRA request.

---

[2] Over the course of the hearings, the parties clarified the scope of the dispute, which we include by way of background only.  The CPUC stated it had produced every record between the CPUC and Southern California Edison that Aguirre had asked for.  In a "status update" filed after the meet and confer, Aguirre stated that documents withheld were based on two statutory exemptions to the PRA, Government Code section 6255 (deliberative process) and section 6254, subdivision (l) (correspondence with governor).  At a subsequent hearing, Aguirre stated that 133 documents were at issue.  Counsel for the CPUC stated that more than 1,300 documents had been released to Aguirre.

[3] Originally the trial court issued a lengthy tentative ruling on November 5, 2015, sustaining the demurrer because the CPUC "established that the court does not have jurisdiction to hear the matter," citing section 1759 and *PegaStaff v. Public Utilities Commission* (2015) 236 Cal.App.4th 374, 383 (*PegaStaff I*), and because plaintiff "did not plead facts that he exhausted the administrative relief provided by defendant prior to filing the instant suit."

[4] We have jurisdiction to review the superior court order overruling the demurrer and asserting subject matter jurisdiction under Code of Civil Procedure sections 1085 and 1103 and *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893 (*Covalt*).

3

DISCUSSION

In reviewing a demurrer, we assume the truth of all properly pleaded and judicially noticeable material facts within the complaint, but not " ' "contentions, deductions or conclusions of fact or law." ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  Whether the superior court has jurisdiction over this action against the CPUC is a question of law which we review de novo.  (*Disenhouse v. Peevey* (2014) 226 Cal.App.4th 1096, 1102 (*Disenhouse*).)

A.  *Statutory Limitations on Jurisdiction in CPUC Matters*

The origins and broad authority of the CPUC are well known and have been described by our Supreme Court:  "The [CPUC] is a state agency of constitutional origin with far-reaching duties, functions and powers.  (Cal. Const., art. XII, §§ 1-6.)  The Constitution confers broad authority on the commission to regulate utilities, including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures.  (*Id.*, §§ 2, 4, 6.)" (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 905.)

In *PegaStaff I, supra,* 236 Cal.App.4th 374, we recently described the limitations on jurisdiction in cases where the CPUC is a party.  "[P]ursuant to its plenary authority under article XII, section 5 of the state Constitution 'to establish the manner and scope of review of commission action in a court of record,' the Legislature has explicitly restricted the jurisdiction of the superior court in cases involving the CPUC."  (*Id.* at p. 383.)  We then went on to cite section 1759, which was at issue in *PegaStaff I* and is at the heart of this case.  It provides:  "(a) No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.  [¶] (b) The writ of mandamus shall lie from the Supreme Court and from the court of appeal to the commission in all proper cases as prescribed in Section 1085 of the Code of Civil Procedure."

4

In *PegaStaff I*, plaintiff PegaStaff sued the CPUC, claiming, among other things, that Article 5 of the Public Utilities Code was unconstitutional. Article 5 required the CPUC to take steps to implement the goals of encouraging and developing the use of women, minority and disabled veteran-owned business enterprises within the public utility sector. (*PegaStaff I, supra,* 236 Cal.App.4th at pp. 377, 381.) PegaStaff sought a declaration that the provisions of Article 5 were unconstitutional, and an injunction against their enforcement by the CPUC. (*Id*. at p. 384.) In concluding that the superior court did not have jurisdiction over the CPUC because of section 1759, we wrote that section 1759 "make[s] plain that a duty set forth in law *is* an official duty. Nothing about that language suggests that a law must first be found constitutional or otherwise valid in order to be a source of the CPUC's 'official duties.' So long as a law was validly enacted by the Legislature, any duties such statute imposes on the CPUC are 'official duties' within the meaning of section 1759, and the superior courts lack jurisdiction to interfere with the duties it imposes." (*PegaStaff I* at p. 385.)

B. *The Public Records Act*

The PRA was modeled on the federal Freedom of Information Act (5 U.S.C. § 552 et seq.) for the purposes of giving members of the public access to information possessed by public agencies. (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425 (*Filarsky*).) In enacting the PRA, the Legislature declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) To that end, the PRA establishes a statutory scheme under which a state agency must respond to a request for public records, either by complying with the request or by notifying the requestor that records are not subject to disclosure and providing the reason why. (See Gov. Code, §§ 6253-6254; *Filarsky*, *supra*, 28 Cal.4th at p. 425.)

It is undisputed that the PRA applies to the CPUC.[5]  The CPUC is specifically listed in the PRA as being one of the state agencies that "shall establish written guidelines for accessibility of records" under the PRA.  (Gov. Code, § 6253.4.)  In turn, the CPUC has set forth its written procedures for PRA requests in its General Order No. 66-C.[6]  (See Resolution L-487 (Dec. 17, 2015) Cal. Pub. Util. Com., 2015 Cal. PUC LEXIS 804 at *3 ["The Commission has . . . implemented its responsibility under Cal. Gov't. Code § 6253.4(a), by adopting guidelines for public access to Commission records.  These guidelines are embodied in G.O. 66-C"].)

The PRA also establishes "specific procedures for seeking a judicial determination of a public agency's obligation to disclose records in the event the agency denies a request by a member of the public."  (*Filarsky*, *supra*, 28 Cal.4th at p. 426.)  These procedures are set forth in sections 6258 and 6259 of the Government Code.

Government Code section 6258 states that "Any person may institute proceedings for injunctive or declarative relief or writ of mandate *in any court of competent jurisdiction* to enforce his or her right to inspect or to receive a copy of any public record or class of public records under [the Act].  The times for responsive pleadings and for hearings in these proceedings shall be set by the judge of the court with the object of securing a decision as to these matters at the earliest possible time."  (Emphasis added.)

Government Code section 6259 describes the process of judicial review in detail, and begins with a specific reference to the superior court:  "(a) Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he or she should

---

[5] Government Code section 6252, subdivision (f) defines "[s]tate agency" under the PRA, and section 6253 requires "state or local agencies" to comply with the PRA and sets forth "agency duties."

[6] On our own motion, we take judicial notice of General Order No. 66-C as an official act of the CPUC, a state agency.  (Evid. Code, § 452, subd. (c).)

not do so.  The court shall decide the cases after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and any oral argument and additional evidence as the court may allow."  If the court finds that the decision to refuse to disclose was not justified under Government Code sections 6254 or 6255, which describe the "[e]xemption of particular records" to disclosure and the "[j]ustification for withholding records," respectively, the court orders the records disclosed; if the court determines otherwise, the court returns the records to the public official and issues an order supporting the decision not to disclose.  (Gov. Code, § 6259, subd. (b).)

Government Code section 6259, subdivision (c) provides that a superior court order directing disclosure or supporting the public official's decision refusing disclosure is reviewable by "petition to the appellate court for the issuance of an extraordinary writ," and sets out the time requirements for seeking such relief, as well as the grounds for seeking a stay of relief and the availability of contempt of court for failure to obey the order of the court.  The statute also provides for court costs and reasonable attorney fees to a prevailing plaintiff, and the possibility of court costs and reasonable attorney fees to the public agency if the plaintiff's case is clearly frivolous.  (*Id.*, subd. (d).)[7]

---

[7] In *Filarsky, supra,* 28 Cal.4th 419, the City of Manhattan Beach (City) denied a PRA request made by a member of the public.  After the individual stated his intent to file a judicial proceeding under Government Code section 6258, but before he had actually done so, the City filed an action for declaratory relief under Code of Civil Procedure section 1060 for the purpose of ascertaining that it was not obligated to disclose records to the petitioner under the PRA.  The member of the public demurred to the complaint, but the trial court overruled the demurrer and granted declaratory relief to the City.  Our Supreme Court in *Filarsky* held that the PRA does not authorize a public agency to initiate an action under Government Code sections 6258 and 6259 to determine its obligations to disclose documents to a member of the public, and that a declaratory relief action filed under Code of Civil Procedure section 1060 to determine whether an agency must publicly disclose records is also impermissible.  In so holding, our Supreme Court described Government Code sections 6258 and 6259 as "special statutory provisions governing judicial proceedings" arising under the PRA (*Filarsky* at p. 428), and explained how they provide "protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure"

C. *Jurisdiction to Enforce a PRA Action Against the CPUC*

The CPUC demurred to the Complaint on the ground that section 1759 divested the superior court of jurisdiction.

We are aware of no published cases that have addressed the precise issue before us. In a closely analogous case regarding another sunshine-type ordinance in the Government Code that also imposes duties on the CPUC, our colleagues in the Fourth District held in *Disenhouse, supra,* 226 Cal.App.4th 1096 that section 1759 divested the superior court of jurisdiction to review claims that CPUC was not complying with the Bagley-Keene Open Meeting Act (Bagley-Keene). Similar to the PRA, the intent of Bagley-Keene is "that actions of state agencies be taken openly and that their deliberation be conducted openly." (Gov. Code, § 11120.) And like the PRA, Bagley-Keene applies to the CPUC. (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 797.) In *Disenhouse*, an individual filed a complaint and then an application for an injunction requiring a CPUC meeting to be opened to the general public. The superior court denied the injunction and entered a judgment of dismissal on the ground that it had no jurisdiction under section 1759. In upholding the superior court's decision, the Court of Appeal in *Disenhouse* applied the "long-standing rule requiring us to construe the

_____

(*id*. at p. 427), and how they differ in many ways from "ordinary declaratory relief actions." (*Id*. at p. 428.) Our Supreme Court held that the trial court "should have sustained petitioner's demurrer to the complaint on the grounds that (1) Government Code sections 6258 and 6259 set forth the exclusive means under *these circumstances* for litigation of the question whether the requested records must be disclosed, (2) litigation of the matter pursuant to those provisions is the more appropriate procedure for granting effective relief, and (3) those provisions do not authorize the city to initiate a judicial proceeding to determine its obligation to disclose public records that have been requested pursuant to the [PRA]." (*Id*. at p. 435, emphasis added.) In describing the limited nature of its holding, the court said that it had "no occasion to decide" other issues that the case did not present, such as whether a public agency would be authorized to seek disclosure of records in the possession of another public agency, or whether a third party had the right to seek a judicial ruling precluding the disclosure of documents pursuant to the PRA. (*Id.* at p. 431.) Nor did the Supreme Court in *Filarsky* address the issue before us, which is whether the superior court has jurisdiction in the first instance to resolve a PRA dispute by a member of the public addressed to the CPUC.

[Bagley-Keene] Act and section 1759 'in a manner which harmonizes their language and avoids unnecessary conflict.' (*Waters v. Pacific Tel. Co.* (1974) 12 Cal.3d 1, 11.)" (*Disenhouse, supra,* at p. 1102.) That entailed construing the judicial enforcement provisions of the state's open meeting law (Gov. Code, § 11130.3, subd. (a)) in light of section 1759, subdivision (b). Government Code section 11130.3, subdivision (a) provides that interested persons could "commence an action by *mandamus*, injunction, or declaratory relief" for the purposes of stopping or preventing violations of the open meeting law. (Emphasis added.)

The Court of Appeal in *Disenhouse* had little difficulty concluding that the two statutes could be harmonized and that the superior court did not err in dismissing the case: "Our task is straightforward in this case because a mandamus action may be brought against the commission in the Supreme Court or the Court of Appeal in appropriate cases (§ 1759, subd. (b)), and a mandamus action is one of the available means of enforcing the [open meeting act]. (Gov. Code §§ 11130, subd. (a), 11130.3, subd. (a).)" (*Disenhouse*, *supra*, 226 Cal.App.4th at p. 1102.)

In so concluding, the court in *Disenhouse* made clear that its holding did not "effectively exempt" the CPUC from the reach of the open meeting act. (*Disenhouse, supra,* 226 Cal.App.4th at p. 1102.) "Rather, it respects both the Legislature's aims in placing limits on judicial review of commission actions as well as the Legislature's aims under the [Open Meeting] Act." (*Id.* at p. 1102.)

We conclude that the duty to comply with the PRA is unquestionably an "official duty" of the CPUC. (*PegaStaff I, supra,* 236 Cal.App.4th at pp. 384-385.) A "*writ of mandate in any court of competent jurisdiction*" is one of the statutory means available to enforce the PRA (Gov. Code, § 6258, emphasis added), and a "writ of mandamus" may be brought against the CPUC in the Supreme Court or the Court of Appeal in appropriate cases under section 1759, subdivision (b).[8] Indeed, in the matter before us, Aguirre

---

[8] A writ of mandate is the same as a writ of mandamus. (See Black's Law Dict. (10th ed. 2014) p. 1105.)

9

asserts in his Complaint that the superior court "has jurisdiction under Govt. Code § 6258."

As in *Disenhouse*, our limited holding does not exempt the CPUC from the requirements of the PRA, or limit Aguirre from seeking judicial relief to enforce his rights under the PRA. He simply may not seek that relief at the superior court. Our holding respects the mandate of section 1759, subdivision (b).

In opposition to the writ, Aguirre does not cite our decision in *PegaStaff I*, let alone distinguish it.[9] The two cases he cites in opposition do not support his position that

---

[9] In overruling the demurrer, although the superior court cited *PegaStaff I*, it appeared to mistakenly rely on inapposite language from an entirely different decision captioned *PegaStaff v. Pacific Gas & Electric* Co. (2015) 239 Cal.App.4th 1303 (*PegaStaff II*), and then attribute that language to *PegaStaff I*. It compounded the error by referring to *PegaStaff II's* citation to *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 281 (*Hartwell*), as if it, too, had been cited in *PegaStaff I*. No doubt recognizing the error, Aguirre, in opposing the writ, does not address the trial court's reasoning or address any of these cases discussed by the superior court in its written order; he simply quotes verbatim from the trial court order.

Neither *Hartwell* nor *PegaStaff II* involved lawsuits against the CPUC. They are part of a line of cases which concern third party lawsuits against a CPUC regulated utility, rather than against the CPUC itself. In *PegaStaff II*, we addressed to what extent section 1759 bars jurisdiction in superior courts in actions filed against regulated utilities and the " ' "potential conflict" ' " between section 1759 and Public Utilities Code section 2106, which permits a private right of action against regulated utilities. (*PegaStaff II, supra,* 239 Cal.App.4th at p. 1315.) In *PegaStaff II*, we concluded that the superior court had jurisdiction in a case against PG&E challenging its minority enterprise program. In so holding, we discussed and applied the test developed in *Covalt, supra,* 13 Cal.4th 893 in actions against regulated utilities. As we described: " 'In *Covalt*, the Supreme Court " 'established a three-part test to determine whether an action is barred by section 1759: (1) whether the commission had the authority to adopt a regulatory policy; (2) whether the commission had exercised that authority; and (3) whether the superior court action would hinder or interfere with the commission's exercise of regulatory authority.' " ' " (*PegaStaff II, supra,* 239 Cal.App.4th at p. 1315.) "The issue in *Covalt* was whether section 1759 barred a superior court action for nuisance and property damage allegedly caused by electric and magnetic fields from power lines owned and operated by a public utility. [Citation.] The court, considering the third prong of the test, concluded that a superior court verdict for plaintiffs would be inconsistent with the PUC's conclusion 'that the available evidence does *not* support a reasonable belief that 60 Hz electric and

the superior court is empowered to adjudicate his present claims against the CPUC.[10] Instead, Aguirre focuses on the fact that Government Code section 6259 refers to PRA proceedings in superior court, and concludes that this must trump any other statutory provision such as section 1759, subdivision (b).

This is not persuasive. First, Government Code section 6258 describes a PRA challenge being brought in "any court of competent jurisdiction." This phrase implies the existence of a writ proceeding in a court *other* than the superior court. Second, by its

magnetic fields present a substantial risk of physical harm, and that unless and until the evidence supports such a belief regulated utilities need take no action to reduce field levels from existing power lines.' [Citation.] [¶] Since *Covalt* was decided, courts have had repeated occasion to apply the test it established." (*PegaStaff II, supra,* 239 Cal.App.4th at pp. 1315-1316.)

*Hartwell* was one of those cases: a lawsuit was brought by a resident against water providers who were regulated by the CPUC, and against nonregulated water providers and industrial defendants who were not regulated by the CPUC. The nonregulated water providers and industrial defendants claimed that section 1759 applied to preempt superior court actions against them as well as the CPUC regulated utilities. Their claim was in part based on the contention that the statutory language in section 1759 does not distinguish between utility and nonutility parties to a lawsuit. Our Supreme Court found this argument meritless, and rejected it for many reasons. Quoting from the Court of Appeal decision in *Hartwell* with approval, the Supreme Court in *Hartwell* wrote, " 'Section 1759 provides that no trial level court may "review, reverse, correct, or annul" or "enjoin, restrain, or interfere with" the PUC in its performance of its duties. By no stretch of language or logic does this mean that trial courts may not decide issues between parties not subject to PUC regulation simply because the same or similar issues are pending before the PUC or because the PUC regulates the same subject matter in its supervision over public utilities.' . . . [¶] We agree." (*Hartwell, supra,* 27 Cal.4th at p. 280.) It was in this context that the Supreme Court in *Hartwell* wrote that "when read in context with the entire regulatory scheme, section 1759 must be read to bar superior court jurisdiction that interferes with the PUC's performance of its *regulatory* duties, duties which by constitutional mandate apply only to regulated utilities," and a lawsuit against nonregulated defendants was not barred by section 1759. (*Id.* at pp. 280-281.)

[10] The only case authority Aguirre cites in its favor, let alone addresses, is *In re Application of Mills Sing* (1910) 14 Cal.App. 512, 513 (habeas corpus petition that construes "section 26 of the juvenile court law") and *Meyer v. Bd. of Trustees* (1961) 195 Cal.App.2d 420, 430 (mandamus action to compel a school board to reinstate a teacher; interpreting a section of the education code). Aguirre attempts to distinguish *Disenhouse*, but not convincingly.

11

nature, the broad limitation on jurisdiction in section 1759, subdivision (a) will sometimes result in depriving the superior court of jurisdiction it might otherwise have as a court of general jurisdiction had the party been other than the CPUC. (See Cal. Const., art. VI, § 10.) This is so even where there is a statute that explicitly provides for relief in a superior court. For example, in *Independent Laundry v. Railroad Commission* (1945) 70 Cal.App.2d 816 (*Independent Laundry*), a landlord sued its tenant, the gas company, and the Railroad Commission (the predecessor to the CPUC[11]) in superior court. The lawsuit sought declaratory relief under Code of Civil Procedure section 1060, which provided then, as now, that an action could be brought "in the superior court for a declaration of rights and duties." At issue was whether the superior court had jurisdiction over the Railroad Commission in light of former section 67 of the Public Utilities Act, the predecessor to section 1759.[12] In affirming the trial court order sustaining a demurrer without leave to amend and granting a motion for judgment on the pleadings on jurisdictional grounds, the court in *Independent Laundry* made the point that despite the existence of Code of Civil Procedure section 1060, that "section does not enlarge the jurisdiction of the superior court as to parties and the subject matter, so that if the commission or the subject matter of this action is not within the jurisdiction of the superior court, section 1060 will not confer such jurisdiction." (*Independent Laundry*, *supra*, 70 Cal.App.2d at p. 821.) The same can be said in the matter before us. The fact that Government Code section 6259 refers to the superior court in connection with actions under the PRA does not enlarge jurisdiction in the superior court when the case is against the CPUC.

Aguirre also contends that the Legislature did not intend for section 1759 to remove jurisdiction from the superior court in PRA cases, because there is a particular provision of the PRA (Gov. Code, § 6253.4) that requires the CPUC to comply with the PRA, and this must be "paramount" to the "general provisions" of section 1759. Aguirre

---

[11] See *Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1037 (Railroad Commission was administrative predecessor of CPUC).

[12] See *PegaStaff I, supra,* 236 Cal.App.4th at page 385.

asserts that "[t]his interpretation is reinforced by the Constitutional mandate that statutes shall be 'narrowly construed if it limits the right of access,' " citing California Constitution, article I, section 3, subdivision (b)(2).

We are not persuaded. Article I, section 3, subdivision (b)(1) of the California Constitution states that the "people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." Article I, section 3, subdivision (b)(2), relied on by Aguirre, is a rule of construction, and states in part: "A statute . . . including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access."

Aguirre has not shown how section 1759 limits any right of access. The CPUC is required to comply with the PRA, whether review is in the superior court or the appellate court in the first instance. If there is a dispute as to whether the CPUC has complied with the PRA, filing an action against the CPUC in an appellate court, as required by section 1759 and contemplated as a possibility by Government Code section 6258, will not limit the public's right to access to the documents. Aguirre's attempt to argue otherwise is not based on section 1759, but on the CPUC's own administrative procedures for making and responding to PRA requests, as set forth in General Order No. 66-C. But this is entirely separate from whether the superior court enforces a PRA request, rather than an appellate court in the first instance.

Aguirre also contends that original appellate jurisdiction over PRA claims cannot have been intended and will not work because the appellate court would not be able to review any documents withheld by the CPUC in camera to determine whether a statutory exemption is valid. This argument is without merit; neither Government Code section 6258 nor section 1759 compels this conclusion. Aguirre's theory is that withheld documents would be considered "new evidence" under Public Utilities Code section 1757, subdivision (a), which states that "[n]o new or additional evidence shall be introduced upon review by the court." But as the CPUC points out, if the CPUC denied a

13

PRA request for documents, it would have reviewed the applicable records in reaching its decision, which would thus make them part of the CPUC's official record subject to review before a Court of Appeal (see Pub. Util. Code § 1706); and if the record did not contain the documents, the CPUC might leave itself open for reversal for lack of substantial evidence to support its decision. (Pub. Util. Code § 1757.1, subd. (a)(4) [court may reverse commission when order "is not supported by the findings"].)

Much of Aguirre's opposition to the writ petition argues the merits of his PRA request, including several pages that intersperse photographs of the key individuals involved and reproductions of handwritten notes and emails right into the text. As we indicated at the outset, we are not reaching any decision on the merits of the PRA request, and the merits do not inform our decision as to subject matter jurisdiction.

D. *Exhaustion of Administrative Remedies*

Because we conclude that the superior court had no jurisdiction other than to sustain the demurrer without leave to amend under section 1759, we do not need to address the other ground for this writ petition—Aguirre's failure to exhaust administrative remedies.[13]

## DISPOSITION

The superior court is directed to sustain the demurrer without leave to amend and is prohibited from conducting any further proceedings in this matter.

---

[13] "When remedies before an administrative forum are available, a party must in general exhaust them before seeking judicial relief." (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609.)

 

 

 

_____
Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

A147570, *CPUC v. Superior Court*

Trial Court and Respondent:  Superior Court of San Francisco County

Trial Judge:  Hon. Ernest J. Goldsmith


Attorneys for Petitioners
California Public Utilities Commission          Arocles Aguilar
                                                Laura Gasser
                                                Mitchell Shapson
                                                Jonathan C. Koltz


Attorneys for Real Party in Interest
Michael J. Aguirre                              Michael J. Aquirre
                                                Maria C. Severson


A147570, *CPUC v. Superior Court*